May it please the Court, Your Honors, Tim Scott on behalf of the Appellant, Mr. Avalos. The question presented in this appeal is whether Appellant Avalos should have been permitted to withdraw his guilty plea in light of new facts and changes in law, and more specifically, whether that new information presented a quote, fair and just reason to withdraw the plea under this Court's precedent. Now, legally, the standard is not supposed to be particularly demanding. It's not supposed to be a tremendously high hurdle to demonstrate a fair and just reason. This Court's precedent has described it as a quote, generous standard, and one that is... Yes, there was a plea waiver here, right? There was. A very broad appeal waiver. The government's argument is that the appellate waiver precludes review of the motion to withdraw the plea. Well, it precludes review of everything but whether it was knowingly involuntary. Right. There may be a collapse in the sense that the motion to withdraw may have been partly on the basis that it wasn't knowingly involuntary. I don't think it was entirely on that basis. But the question isn't whether there was a fair and just reason. The question is whether it was knowingly involuntary. So there is a threshold question, and I think it does collapse in two different ways, as the Court put it. First is whether it was involuntary. And one of the main reasons that was put forward to withdraw the plea was involuntariness and specifically the threat or the prospect of a mandatory life sentence and the Court's indications or musings about the merits of the motions that the defendant very much wanted to run. So involuntariness is one such collapse. But then the second way that the analysis sort of folds in on itself is whether the appellate waiver is enforceable, which I think is a similar but slightly different question as to whether the plea agreement was entered into knowing or whether that portion of the waiver was knowingly and intelligently made. And so I would submit that although that's very similar to involuntariness, there's also a component when it comes to knowing and intelligence as to whether the defendant had the benefit of all the information that he ought to have had in making that arm's-length transaction with the government. Well, the constitutional standard is knowing and voluntary, right? So it has to be both knowing and voluntary. I'm sorry, Your Honor? Isn't the constitutional standard knowing and voluntary? I think knowing, intelligent, and voluntary. So therefore, it has to be both knowing and voluntary. So both of those pieces are part of the constitutional standard. Correct. And so I guess all I was saying is that I think there's some distinction there. It's not simply involuntary. There's also kind of that knowing component to it, which I think we also meet with some of the additional. But what has to be knowing and voluntary is the waiver. That's correct. That's correct. So to put it differently, and I hope I'm not quibbling when I say this, if one of those things is missing, if it's either involuntary or not knowing, then the waiver cannot be enforced, I guess. So why wasn't it knowing and voluntary? The district court went through all of the objections and detailed why he thought in the record they were unsubstantiated. Why was he wrong? Well, I think the undisputed timeline sheds a lot of light on this. And the timeline that I'm referring to is, first, there's no dispute how badly the defendant wanted these motions, the pretrial motions, to be heard. The government, I don't think, disputes that. That's both of the attorneys that were appointed make that clear in the declarations at ER 656 and 652. The court gave, we can debate whether it was a tentative or sort of musings that sort of cast doubt on the merits of the motions in the court's view. How long is that, by the way? I couldn't find it. Starting at page 517 of the ER, the court engages, the district court engaged in kind of a colloquy with the trial lawyer at the time about the different motions. And wouldn't this create reasonable suspicion to stop? And there's not really an issue here in this fact. That goes on starting at 517 for 10 or 15 pages of the record. And I think, importantly, it's immediately on the heels of that that the district court then pivots and starts talking once again, and not for the first time, about the mandatory life sentence that, in the court's view, the defendant was facing. And made very clear, just so Mr. Avalos knows, I have no discretion. This could be catastrophic, and I want it very clear that there's no discretion. No discretion, the court said repeatedly. And so the reason that the timeline is important, I think, is because that very day, immediately after court, the defendant and his attorney at the time sat down and consummated the written plea agreement. And then the very next day after that is when the plea was made. I think that's a fairly unmistakable timeline in terms of what is really motivating Mr. Avalos' change of heart from strenuously wanting to litigate those motions to suddenly signing a plea agreement and pleading the very next time. At the time of this hearing, I think it was February 12th, had the district court already denied the suppression motions for a co-defendant? I don't believe it had. The court had not denied motions at all. It was sort of musing about the motions. Later, in appointing new counsel for Mr. Avalos, the district court told Mr. Avalos that he had denied the motions, but I think that was simply inaccurate. I think the district court was mistaken in saying that. The court also, when it was decided, told Mr. Avalos several different times before about the license. Is that not right? Correct. And that's really, I think, where the rubber meets the road because we don't need to speculate on the district court's motivations in talking about the merits of the motion or in talking about the mandatory life sentence that he felt Mr. Avalos was facing. We simply need to look at it from Mr. Avalos' perspective. Was this something that overbore or could have overborne his will in terms of entering the change of plea, but more to the point, once it became clear and the government can't dispute this, once it became clear that that's certainly not the law anymore under the First Step Act, that Mr. Avalos was not facing a mandatory life sentence, at most was facing a 25-year minimum mandatory rather than life, is that a fair and just reason to withdraw the plea? But that's where I think the difference between knowing involuntary and fair and just reason comes in because it does seem to me that it probably would have been a fair and just reason and perhaps should have been granted. But how could that make the appellate waiver not knowing involuntary when it was as clear as day and the First Step Act hadn't existed? So I think that analytically the way it unfolds for Mr. Avalos, if this court were to reverse, I think that the way that it would happen was to first find that the timeline that I just described of the guilty plea in light of the court talking about Mr. Avalos' motions, repeatedly describing the mandatory life sentence, and then the immediate change of plea thereafter, that those things cast doubt on the voluntariness or give rise to a showing that the plea was involuntary. So we're kind of getting over that involuntariness hurdle. And if we get there, then we look at not just that fact. But that part, pulling the First Step Act in at this point is not helpful. Then looking at that and Lorenzo, the methamphetamine decision as well as the impeachment information on the officer, all of those things come into play if we can get over the hurdle of the voluntariness. I agree with that analytical framework. But I think ultimately we can get there in the first instance. But Mr. Avalos says in his declaration that he was totally shocked by the judge telling him that he was going to have a life sentence if he went to trial, and that's why he was bullied into doing this. But he had been told this many times before. Is that not true? Well, I think, and maybe there's different interpretations of the manner in which he was shocked. I took it to mean not that he was surprised that, oh my goodness, I'm facing life, but that it was shocking that this life sentence was sort of being, that he was being beaten over the head with it, and it was the shock. It's not like they were telling him something for the first time. Well, that's true. But I think also married up with what, in his perception, was a prejudging of the motions, I think it's a confluence of those two that led him to introduce the plea. I see that my time has expired. Thank you very much for giving me this. Thank you, Your Honor. Mr. Baldwin. Good morning, Your Honors, and may it please the Court, Ben Baldwin for the United States. As Your Honors just honed in on, the question before this Court is whether the defendant's decision to plead guilty was knowing and voluntary, and it was. He was advised by two attorneys with whom he had met and discussed the case on several occasions. The district court held multiple pre-plea hearings and discussed the case in detail with the defendant, including the evidence and the defendant's potential sentencing exposure if he went to trial. Let me ask a question. In the plea agreement, as I read it, Mr. Avalos has the option on five of revoking the first plea. Well, I believe the waiver is pretty broad, including with collateral attack. But it says except for a retroactive change in the sentence. And if it were to be outside of that waiver, then yes, he could raise that on collateral attack, Your Honor. The defendant made a voluntary decision to accept a plea agreement that provided him with substantial benefits. He signed that agreement. He certified that he understood the agreement. He discussed it with his attorneys. And the court held a thorough Rule 11 colloquy for the defendant before under oath in open court that he understood the terms of the agreement, and he voluntarily was pleading guilty. Let me tell you what I think about Mr. Avalos' constraint. I understand the constraint, and I think he probably prevailed. But the waiver law, for example, with regard to trial errors, which says that you have to have a known right. Here, the First Step Act didn't exist. So he couldn't have known that he was waiving the First Step Act, which would have accorded him substantial benefits. So how could it be known that he was voluntary? I understand that it was very broad and said, you know, putting changes and so on. But still, it's really, in any objective sense, it might be voluntary, but it's not knowing because there's a no ways waiver. Well, Your Honor, I think the answer to that is, in a few cases, Cardenas is very clear that a change in the law, subsequent change in the law, does not render a voluntary plea involuntary. I want to know what kind of sense that makes, given the general understanding of what a knowing and voluntary waiver is. I think it's important to give some sort of value to agreements, pleas that are entered at the time. You know, how long should we leave the door open for any sort of change? I think Brady, the Supreme Court, has said very clearly that the decision to plead guilty is based on what is known at the time. And if subsequent changes or a miscalculation of the strength of the government's case or those sorts of factors come into play, that's not enough to invalidate a plea. I understand in concept that, yes, you know, change in the law subsequently after someone has pleaded guilty. My understanding is that the first step back specifically applies to people who pled before a certain date if they still had been sentenced, something like that, and then he falls into that group, or at least arguably falls into that group. How could he have known he was waiving that? He couldn't have. I don't know for sure I'm right, but I'm assuming I'm right. I believe you are right on that particular factor, Your Honor, that it would apply because he was pre-sentencing in this case. However, again, the law is clear that you do not need to be able to foresee changes in the law to make it a knowing and voluntary waiver act. I don't want to engage with my question of how can that be. So I understand that you have case law, but it doesn't make any sense to me. Fair enough, Your Honor. I would say that what's important in this case in terms of looking at the voluntariness of the plea, again, which defendant cites supports that it's at the time of the plea, and subsequent changes such as we've discussed, and also impeachment evidence under the Ruiz case do not make a voluntary plea involuntary. So focusing on that, you now look at the standard of review. Well, this court is looking at the knowing and voluntary from a de novo perspective, but the factual findings of the court are reviewed for clear error, both for whether the appellate waiver is enforceable, and also for whether the court's decision on voluntariness at the motion to withdraw phase should be reviewed. So the factual statements and the factual assertions on which defendant relies and on which he relies in his brief here were flatly rejected by the court and are unsupported by the record. The court went into great detail to explain. And this court is bound, you know, unless those were clearly erroneous, which I assert they were not. I think when you look at the case law, Geronimo is very interesting because the majority opinion, I think, clearly supports the government here that this was a voluntary waiver and is enforceable. But, Your Honor, Judge Burrs, on your dissent in that case, I think hones in on some questions and some issues. But if you look at the facts of this case, those are not of a concern that would require you to go against Geronimo's majority opinion. I think what happened here is that we don't have a situation where the defendant is making unrefuted assertions of coercion or of unknowing or the factual assertions that he claims made his plea involuntary. Rather, we have a very developed record, including declarations by his two attorneys and factual findings by the court that say that, no, this was a voluntary plea. And his self-serving after-the-fact statements do not override his under oath statements at the change of plea, supporting the voluntariness and determination. So, therefore, you've got a case where we've got a valid waiver because it stands and falls with the plea of which it's a part. And it waived every other claim the defendant has other than voluntariness. Now, because it was voluntary, that one preserved objection on the motion to withdraw, we've already decided that that is, again, should be denied because, as the court found... What is he doing? It's knowing involuntary, right? Correct. Correct. Correct. Oh, I'm sorry. How is it knowing? Yes, Your Honor, I think the record is clear that the defendant was fully aware of the consequences of his plea, of the facts against which he was asserted with regard to this reason given by defense counsel that he wanted to have his suppression motions heard. First off, it expressly said in the hearing the court was not prejudging those. I directed the court to ER 519 and 520. He said he'd wait for the replies before making any decision. But, nevertheless, the plea said explicitly the defendant was waiving his right for having pretrial motions heard. The district court is entitled to give way to the defendant's assertion on that, that he fully knowing what he was giving up, he was voluntarily and knowingly entering into the plea agreement. In addition, there are the numerous... I think defense counsel makes a lot out of the timeline here, but if you look at the amount of time this district court spent going over the case with defendant, I mean, there are three hearings before the change of plea, including two lengthy hearings discussing the case in detail. I think fully informing the defendant of the consequences of going forward to trial is not coercing him in any way. I think it's making sure he's able to make a knowing and voluntary decision to enter the plea. So giving back, though, to the standard, if this court does hold that the waiver was knowing and voluntary, I think that precludes the argument that the motion to withdraw should be revisited on just voluntariness, because I think you've already made that determination in saying that the waiver was enforceable as to the first problem. Finally, just to clarify one thing, I think the defense counsel mentioned about the denial of the motions. When the court referred to that, I think the court was referring to after the suppression motions were discussed and then after the defendant pled, another defendant came along who had not been apprehended yet. She filed suppression motions as to two of the exact same incidents on pretty much the same grounds, and then the court had denied those motions. So I think the court's statement was accurate, although it was referring to a different defendant. Unless the court has any other questions. There was a government witness whose veracity was implicated, and I understand that he was only relevant to one of the three charges. Suppose he had been relevant to all of the charges. Would that have made the plea not knowing and voluntary? I don't think it would have made it not knowing and voluntary. I think Ruiz talks about impeachment evidence as related to a trial right, Your Honor, not something a defendant is entitled to know as to all, you know, at the time of the plea. So, again, subsequent impeachment evidence, even if it applied to more, I think it would change the analysis. If the government were committing Blanton-Brady violations, for example. No, no, that's certainly, Your Honor, I'm not talking about Brady violations. I'm talking about impeachment evidence. I don't know if this was a Brady violation, but it could have been. No, Your Honor, I think it was very clear this had to do with impeachment evidence, and the government's obligation under Ruiz attaches to trial there. And I think the record shows the reason for that delay. It was ER 105. The government explains the purposes, you know, trial was not happening with that defendant. When the other defendant filed a motion to suppress that was heard, that's when the evidence was discovered. And because this defendant hadn't been sentenced, we reduced it to this defendant, even though his case was effectively over, Your Honor. So I don't think we're talking about a Brady violation, which could, you know, undo. You don't have a Brady violation, I mean, arguably before the trial ended. All right, your time is up.  Thank you, Your Honor. Maybe I'll just say a few words in rebuttal, if the court will permit. The question that I don't think the government was able to satisfactorily answer, or the argument that I think the government was conflating, is that knowing is not the same thing as voluntary. The government wants to say that the plea was voluntary, but it has to be a knowing and intelligent and involuntary waiver in order for the appellate waiver to be enforceable. Simply put, Mr. Avalos didn't know at the time of entering the guilty plea that one of the main witnesses against him had all of this impeachment, was a known fabricator, had fabricated police reports. I'm sorry, Your Honor? There's only a witness against him for one of the charges. Absolutely. But that really only goes to the question of, would that have completely shown him innocent, or would that have resolved everything on the merits? And Davis and McKiernan teach us that that's not the analysis. It's not whether that one dirty agent would have led to across-the-board acquittals. Rather, would that have been something that the defendant possibly would have known and figured into the calculation in deciding whether or not to plead guilty? So it's really, could he have driven a better bargain with that information? Could he have thought twice about whether or not he wanted to give up those motions under the circumstance? I think that's the proper test. Additionally, he didn't know that in several months' time, he wouldn't be facing a life sentence. Had he known that at the time? Well, the case law, which, as I say, I question, does preclude that argument, doesn't it? Sorry? Doesn't the case law preclude that argument? I don't know that it does, because it would be a knowing and intelligent waiver if that's something that he didn't know or couldn't have anticipated. All right, but changes in the law in general, when he specifically agreed to an appellate waiver, even with regard to changes in the law, how can changes in the law under the existing case law be a ground for saying it wasn't knowing and voluntary? Well, I guess I would have to just say that I don't know that the record supports him specifically giving up in a knowing, intelligent, voluntary way changes in the case law. I would agree it can be argued like that, that it's written very broadly. I don't know that the record is so clear that he gave that up specifically. But with that, I think I've used my time. Okay, thank you very much. The case of the United States v. Appellate is submitted.
judges: Baldock, Berzon, Collins